UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 3:09-CR-266 (CFD) |
| | : | |
| GREGORY RUSSELL | : | |
| | : | |

## RULING ON POST-TRIAL MOTIONS

**I.    Introduction**

After a jury trial which concluded on March 3, 2010, the defendant Gregory Russell was convicted on three counts: (1) unlawful possession of a firearm by a convicted felon, (2) possession with intent to distribute cocaine base, and (3) possession of a firearm in furtherance of a drug trafficking crime. At the close of the government's evidence, Russell moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure Rule 29(a), which this Court denied. After trial, Russell renewed his motion for judgment of acquittal. In addition, Russell has filed several *pro se* post-trial motions seeking to dismiss the indictment against him because of government misconduct, and seeking a new trial because of ineffective assistance of counsel.

**II.   Background**

Gregory Russell was indicted on December 1, 2009 concerning the events of July 25, 2009. The first count was possession of a firearm by a felon in violation of 18 U.S.C. § 922(g); the second count was possession of cocaine base with intent to distribute it in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C); and the third count was possession of a firearm in

furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).

At trial, the government offered the testimony of several witnesses to prove Russell's possession of the firearm, an Iberia .40 caliber pistol, and his possession of cocaine base. Stamford police officer Christopher Petrizzi testified that shortly after midnight on July 25, he saw Russell enter the front passenger door of a black Cadillac at the intersection of Atlantic Street and Woodland Avenue in Stamford. Petrizzi testified that he approached the car to execute a violation of probation warrant for Russell, but Russell initially refused to leave the car. After several commands that he get out of the car, Russell suddenly got out, spun away from Petrizzi, and was facing Officer Christopher Broems, who was near the driver's side door. Petrizzi testified that he observed Russell reach into his front waistband area of his pants with his right hand, and then Petrizzi tased Russell. As the taser prongs attached, Petrizzi testified that he saw Russell begin to withdraw his hand from his front waistband area, and then he heard what he believed to be the sound to be a gun hitting metal. Russell attempted to get up and Petrizzi used his taser again. Once Russell was down on the ground, Petrizzi turned to the curb and found an Iberia, Model S&W, .40 caliber pistol wrapped in a green bandana. The firearm was located next to a sewer grate beneath the front passenger door. The firearm was loaded with rounds of hollow point ammunition, and the safety mechanism was off.

Officer Broems also testified at trial. He testified that when Russell spun away from Petrizzi, he had a clear view of the defendant. Broems testified that he saw Russell reach into his waistband and pull out a large, black handgun. He then also heard the sound of gun hitting

metal.¹  In addition, a Forensic Science Examiner from the Connecticut Forensic Science Laboratory testified that the green bandana contained a DNA mixture, and that Russell was a contributor to the mixture.  The government also presented two recorded telephone conversations between the defendant and his friend Lut Muhammed that were recorded after Russell's arrest.  Part of one of the recordings includes Russell saying to Muhammed, in describing his arrest on July 25, that after he had been hit by the "taser gun," "I tried to drop that shit in the sewer."

Officer Petrizzi testified that after Russell was tasered and fell down across the sidewalk, Petrizzi turned back to the car and retrieved the firearm.  Then, as he turned back toward Russell, he observed multiple "baggies" containing drugs within inches of Russell's head and torso.  Other baggies were also found in between the front passenger seat and center console of the Cadillac, and another was found in the center console.  The total weight of the cocaine base in these bags totaled 4.43 grams.²

The government also offered the testimony of Noelle Candido.  She testified that she had known Russell for several years, and that on July 24, 2009, he asked her for a ride to New York City to purchase drugs.  She testified that during the ride she saw Russell with a substantial amount of cash.  They drove to the Bronx, and at one point Russell asked her to park on the street while he left for twenty minutes.  Later, while they washed their clothes at a laundromat, Russell

---

¹ This testimony was consistent with Broems's grand jury testimony, but slightly different from what Broems wrote in the incident report he made the night of the arrest.  In the report he wrote that he "believed" that Russell had a gun, not that he actually saw a gun in Russell's hand.  This issue is discussed later in this opinion.

² The government admitted into evidence Exhibits 31–33, various baggies containing cocaine base.  Russell stipulated that each of the exhibits contained cocaine base, and the government introduced witnesses to prove Russell had knowingly possessed the cocaine base.

asked for Candido's keys and went out to the parking lot. When Candido joined him outside, she saw Russell in the front passenger seat of her car holding what appeared to be a tennis ball-sized chunk of crack cocaine. Russell asked her to put it in her purse, and she agreed. Later that night, at their hotel room, Candido saw Russell use a razor blade to cut the crack cocaine into pieces which he then individually packed in sandwich baggies. Also, a short time before Russell's arrest, she saw him with multiple baggies of crack cocaine on his lap in the car. Candido also testified that during the arrest in Stamford by Officers Petrizzi and Broems she observed Russell withdraw a firearm and attempt to discard it outside the car.

The government also called FBI Special Agent James Wines to offer expert testimony about street-level crack cocaine distribution. Wines testified that a typical "personal use" quantity is approximately 0.1 to 0.2 grams, and that cocaine base distributors typically package retail quantities in plastic baggies. He also testified that to evade detection, distributors often use "stash" locations such as hotel rooms to store and package their product.

Before the trial, Russell's then-counsel Attorney Jonathan Einhorn filed a motion to suppress (Dkt. # 34) and a motion to preclude the testimony of Officer Broems, or in the alternative, to dismiss the indictment (Dkt. # 58). Those motions included the claim that Officer Broems's grand jury testimony and anticipated trial testimony were different from the police report he authored concerning the arrest of Russell. In particular, in the report Broems stated that he "believed" Russell had the handgun, while before the grand jury he stated that he saw the gun. Both motions were denied by the Court. Also before trial, Russell filed his own *pro se* motion to dismiss Count One of the indictment, based on the difference in Broems's two accounts. (Dkt. #

74). In a letter accompanying his motion, Russell also asked the Court to reconsider its ruling on Russell's motion to suppress on the same basis.

After the close of the government's evidence on March 2, 2010, Russell moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. The Court denied the motion. After the jury returned a guilty verdict on all three counts, Russell renewed the motion for judgment of acquittal on March 11, 2010 (Dkt. #84). The original and renewed motions for judgment of acquittal were prepared by Einhorn. On May 17, 2010, Russell filed his first post-trial motion titled "Motion to Dismiss For Government Misconduct" (Dkt. # 93). This motion was written by Russell himself, not Einhorn. A few days later, on June 3, 2010, Russell filed a "Motion to Dismiss for Ineffective Assistance of Counsel" (Dkt. #92). Then on June 7, Russell filed another post-trial motion titled "Motion to Dismiss For Outrageous Government Conduct" (Dkt. #91). On July 17, this Court excused Einhorn as Russell's attorney, and attorney William Paetzold was appointed on July 19, 2010. After the appointment of his new lawyer, Russell continued to author *pro se* post-trial motions, including a Renewed Motion for Acquittal (Dkt. # 102) and a "Motion to Dismiss Indictment Because the Information Fails to Invoke the Court's Jurisdiction" (Dkt. # 109).

Oral argument on the post-trial motions was held on February 7, 2011. Attorney Paetzold argued the renewed motion for judgment of acquittal initially authored by Attorney Einhorn (Dkt. # 84), and Russell argued four of the post-trial motions he authored: motion to dismiss for ineffective assistance of counsel (Dkt. #92); motion to dismiss for government misconduct (Dkt. #93); motion to dismiss for outrageous government misconduct (Dkt. #91); and motion to dismiss indictment because the information fails to invoke the court's jurisdiction (Dkt. # 109).

Russell did not argue his own motion for judgment of acquittal (Dkt. #102). After the hearing, the Court noted Russell could file supplemental papers if he so chose, and Russell has filed four supplemental memoranda (Dkt. # 122, 124, 125, and 127) and a motion for new trial (Dkt. # 126).

### III. Applicable Law and Discussion

**1. Motion to Dismiss for Ineffective Assistance of Counsel**

The Court of Appeals for the Second Circuit has recently held that "the proper procedural avenue for defendants who wish to raise ineffective assistance claims after conviction but prior to sentencing is a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33." United States v. Brown, 623 F.3d 104, 113 (2d Cir. 2010). The court also noted that "form should not be elevated over substance particularly where a federal court is dealing with a *pro se* litigant." Id. Therefore, the Court treats Russell's motion to dismiss for ineffective assistance of counsel as a motion for new trial, and the government does not object to it being considered as such.[3]

The government first argues that the motion should be denied as untimely. Rule 33 requires that a motion for new trial be filed within 14 days after the verdict, unless a late filing is the result of "excusable neglect." Fed. R. Crim. P. 45(b)(1)(B). In Brown, the court found the defendant had at least a "reasonable contention" that his delay was attributable to excusable neglect because he found out about his attorney's allegedly ineffective assistance six months after the verdict. He filed his motion approximately one month after that. Brown, 623 F.3d at 113. In

---

[3] After the oral argument on these motions, Russell submitted an additional motion for new trial pursuant to Rule 33 (Dkt. #126). The Court will consider both motions together.

Russell's case, his delay after the alleged ineffective assistance was longer. Russell's first motion on ineffective assistance was filed on June 3, 2010, approximately four months after Russell believes Einhorn rendered ineffective assistance and three months after the verdict.

However, even if the motion had been timely, it fails to show Einhorn's representation was ineffective. Russell argues that when Einhorn learned Officer Broems's grand jury testimony was inconsistent with the written statement he made the night of his arrest, he should have moved for a Franks hearing. Franks v. Delaware, 438 U.S. 154, 155–56 (1978) held that when the defendant makes a preliminary showing that a knowingly false statement was made in an arrest or search warrant affidavit, the defendant may be entitled to an evidentiary hearing. In this case, Russell's state arrest was not based on a warrant, so there was no affidavit for Einhorn to challenge. Similarly, Russell's federal arrest was based on an indictment, so there was no affidavit to be challenged in a Franks hearing. Einhorn did attempt to preclude the government from offering portions of Broems's testimony by filing a motion to suppress evidence and a motion to preclude testimony, or in the alternative, to dismiss the indictment. In the motion to suppress, Einhorn argued that the gun should not be admitted into evidence in part because Broems's incident report merely stated he "believed" Russell was reaching for a gun. In the motion to preclude testimony, Einhorn argued Broems's trial testimony should be precluded as possibly perjurious, or in the alternative, the indictment should be dismissed because Broems's testimony to the grand jury was in conflict with his statement.

That Einhorn chose to challenge Broems's testimony through these motions, rather than a Franks hearing, shows his representation did not constitute ineffective assistance of counsel. The U.S. Supreme Court has articulated a two-part test for claims of ineffective assistance of counsel.

See Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that his attorney's performance fell below the standard of "reasonably effective assistance." Second, the defendant must show that the deficient performance prejudiced the defense, meaning that the lawyer's errors were so serious as to deprive the defendant of a fair trial. Id. at 687. In this case, Attorney Einhorn's performance was reasonably effective. He repeatedly raised the issue of the purported inconsistency between Broems's incident report and his later testimony. Furthermore, even if Attorney Einhorn's performance had been deficient, Russell was not prejudiced. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Even if had Einhorn committed some error—which this Court does not believe occurred—there was sufficient evidence apart from Broems's testimony for the jury to convict Russell, and any error would have not effected the judgment or otherwise deprived Russell of a fair trial. For these reasons, Russell's motion for a new trial because of ineffective assistance of counsel is denied.[4]

**2. Motion for Judgment of Acquittal**

Federal Rule of Criminal Procedure 29 provides that a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A defendant who challenges the sufficiency of the evidence to support his conviction after a jury

---

[4] The Court also finds that Russell received a fair trial in all other respects. Apart from the issue of the effective assistance of counsel, a court may vacate the judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. Rule 33. A new trial may be granted when the court is convinced the jury's result was seriously erroneous or the verdict is a miscarriage of justice. See United States v. Autuori, 212 F.3d 105, 120 (2d Cir. 2000) (citing to United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998) (quoting Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 370 (2d Cir. 1988))). None of Russell's arguments about Broems's testimony, when taken separately or together, convince the Court that justice requires vacating Russell's conviction, as there is no other basis for granting a new trial.

verdict bears a heavy burden.  See United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997). In weighing whether the evidence was insufficient to sustain the conviction, the court must consider the evidence presented at trial in the light most favorable to the prosecution, crediting every inference the jury might have drawn in its favor.  See United States v. James, 239 F.3d 120, 123–24 (2d Cir. 2000).  As such, a court may not disturb a conviction on grounds of insufficient evidence absent a showing that "no rational trier of fact could have found each essential element of the crime beyond a reasonable doubt." United States v. Walsh, 194 F.3d 37, 51 (2d Cir. 1999).

Russell argues that the government's evidence was insufficient as to all three counts, and therefore his conviction on all three counts should be overturned.

### a. Count One

The elements of the first count of conviction are (1) a prior conviction of a crime punishable by imprisonment of a term in excess of one year, (2) knowing possession of the weapon by the defendant, and (3) that the possession was in or affecting interstate or foreign commerce.  Russell stipulated that the first and third elements had been met, so this motion challenges only the sufficiency of the evidence to show he knowingly possessed a weapon.

Russell argues that the testimony was inconsistent as to whether anyone actually saw the gun in Russell's possession.  Officer Broems's report on the night of the arrest stated that he "believed" Russell had a gun, but at trial he testified that he saw a gun in Russell's hands. Officer Petrizzi testified that he saw Russell reach into his front waistband, and that he heard what the thought was a gun hitting metal. Candido testified that she saw a gun, but not a green bandana.  It was undisputed that his DNA and fingerprints were not on the gun in question, but

were on the bandana. Russell argues that the area where the gun was found was a high crime area and the gun recovered near his body could have been dropped by someone else.

In response, the government notes that this argument was made to the jury, and rejected. Because the jury is "exclusively responsible" for making determinations of witness credibility, United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993), it was the jury's role to decide how much weight to give this testimony, and to credit it or not. A rational trier of fact could have concluded from this evidence that Russell knowingly possessed the gun. Therefore, there was sufficient evidence to convict Russell of Count One.

### b. Count Two

The elements of the second count of conviction are (1) that the defendant possessed a detectable amount of a controlled substance—in this case, crack cocaine, (2) that the defendant knew that he possessed the same, and (3) that he intended to distribute it. While the parties stipulated that the substance that was found was crack cocaine, Russell denies that he ever possessed the substance, and argues there was insufficient evidence to establish all three elements of the crime.

Russell argues that since no one testified to actually seeing the baggies of crack cocaine—either those found on the sidewalk near where Russell was tasered or those found in the car—in his possession, he claims it was speculation that he had in fact possessed any drugs. Russell also argues Candido's testimony about the "tennis ball" sized quantity of crack was insufficient. As to the third element, that Russell intended to distribute the crack, he argues that because the government failed to introduce any testimony from people who bought drugs from Russell, there is insufficient evidence to establish that he intended to distribute any drugs.

Russell also notes the government failed to introduce any "customary artifacts of drug dealers," such as scales, empty baggies, razor blades, or pre-paid cell phones.

As with Count One, Russell essentially argues that the testimony of the government's witnesses—Candido and Special Agent Wines—should not be credited. But the jury inferred that the baggies found near Russell belonged to him. The jury chose to believe Candido's observation that Russell previously that day had a tennis ball-sized amount of crack cocaine. The jury also inferred from the testimony of Special Agent Wines that Russell's behavior involved many of the same techniques employed by other area drug dealers. Finally, the testimony of Officers Petrizzi and Broems concerning the crack cocaine found during the arrest, including its packaging and location, was substantial. Because all inferences the jury made must be credited in its favor, the Court finds there was sufficient evidence that Russell possessed crack cocaine with an intent to distribute it, and his conviction on this count should not be overturned.

### c. Count Three

The elements of the third count of conviction are (1) that the defendant is guilty of Count Two (possession with intent to distribute) and (2) that he knowingly possessed a weapon in furtherance of that drug activity. The Court instructed the jury that in order to prove that the defendant possessed the firearm in furtherance of his drug trafficking crime, the government had to show that the firearm helped forward, promote or advance the commission of the crime. Russell argues that because there was no evidence that the weapon was "brandished" in any way, there was no evidence the gun helped advance the commission of the crime. Id. at 7.

This is too narrow an interpretation of the second element of this count, and of the Court's instruction to the jury. Russell need not have "brandished" the weapon to have used it

"in connection" with the drug crime. Although courts look to a number of factors to determine whether a nexus exists between possession of a firearm and drug trafficking, "the ultimate question is whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." United States v. Snow, 462 F.3d 55, 62 (2d Cir. 2006) (internal citation and quotation omitted). The government lists evidence that was presented which would have allowed the jury to conclude that Russell's possession of the gun afforded him some advantage while trafficking drugs. For example, from the testimony of Candido, the jury could have reasonably concluded that Russell purchased the crack cocaine during their trip to the Bronx, and was carrying the gun as a means of protection, intimidation or enforcement. Also, the jury could have concluded that the $754 that Russell possessed when he was arrested were drug proceeds, and he possessed the firearm, in part, to protect those proceeds. Finally, the gun was loaded with hollow-point ammunition and the safety latch was not activated. Special Agent Wines testified that guns loaded with hollow-point ammunition are particularly useful to protect drug dealers, because the bullets are designed to expand within, rather than pass through, a target. Courts have found a nexus exists between possession of a firearm and drug trafficking when "the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself." Id. at 62–63 (internal citation omitted). Because there was evidence that Russell's gun was loaded, a round chambered, and the gun was readily accessible, a reasonable trier of fact could have concluded that the gun was possessed in furtherance of a drug crime. Therefore, the jury's conviction on this count should not be overturned.

Russell has not carried his "heavy burden" to show there was insufficient evidence to sustain his conviction, and his motion for a judgment of acquittal is dismissed.

### 3. *Pro se* Motions to Dismiss the Indictment

Russell makes three separate arguments challenging his conviction in various post-trial motions. First, he argues his arrest violated the Fourth Amendment because it was without probable cause. Second, he argues the grand jury proceedings violated the federal rules of criminal procedure and his due process rights under the Fifth Amendment because Officer Broems and Assistant United States Attorney Christopher Mattei knowingly presented false evidence to the grand jury. Third, he argues he was denied his Sixth Amendment right to a fair trial because Officer Broems and Attorney Mattei presented false evidence at this trial.

#### a. Claim that Arrest Lacked Probable Cause

To the extent Russell argues his arrest lacked probable cause, the proper remedy is not dismissal of the indictment but suppression of illegally obtained evidence. See United States v. Fields, 592 F.2d 638, 648 (2d Cir. 1978). Russell made a similar argument in his motion to suppress before trial, the proper procedural vehicle for such an argument, and the motion was denied by the Court.

#### b. Claims of Perjury before Grand Jury

Russell claims that Officer Broems perjured himself before the grand jury when he testified that he directly observed Russell holding a firearm shortly before his arrest. To support his allegation, Russell cites to Broems's incident report which states only that he "believed" Russell had a firearm. Russell also argues that because Attorney Mattei was aware of the contents of the report, he knew or should have know Russell's testimony was false and should have corrected it.

In general, "the social costs of dismissing an indictment because of an imperfect grand jury proceeding are simply too high to accept when the defendant has been convicted after a full and fair trial and no harm has been done." United States v. Brito, 907 F.2d 392, 394 (2d Cir. 1990). "[D]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988) (internal citations and quotations omitted). An error in the grand jury proceedings may be also rendered harmless if the defendant is convicted at trial. This is true when the same allegedly perjurious testimony is presented at trial and the defendant has an opportunity to challenge it, but is nevertheless convicted. United States v. Morrison, 153 F.3d 34, 55 (2d Cir. 1988) (holding that when the grand jury was presented with perjured testimony and altered tape recordings, and that same testimony and evidence were then presented to the jury at trial, "the jury's verdict of guilty against Morrison rendered harmless any error resulting from the evidence used to indict him").

In this case, on direct examination at trial, Broems again stated that he directly observed Russell holding the gun at the stop on July 25. Broems was extensively cross-examined with his incident report in an attempt to demonstrate the inconsistency. Therefore, the jury had the opportunity to weigh the credibility of the same testimony that Russell gave to the grand jury, and returned a conviction. Even if Broems's testimony before the grand jury was false—which Russell has not shown—it was nevertheless rendered harmless because the jury had the chance to weigh the same testimony. Therefore, the indictment should not be dismissed based on Broems's

grand jury testimony. Since the jury's conviction rendered Broems's grand jury testimony harmless, so too with the claim against AUSA Mattei.[5]

### c. Perjury at Trial

Russell's memos also make reference to Broems's perjury at trial. Were Russell able to prove that the prosecution knowingly offered perjured testimony, his rights under the Sixth Amendment could be violated and his conviction set aside. "[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Drake v. Portuondo, 553 F.3d 230, 241 (2d Cir. 2009) (citing United States v. Agurs, 427 U.S. 97, 103 (1976)).

But Russell does not offer any evidence that Broems's trial testimony was false. In essence, Russell argues that because Broems's initial incident report did not state that he saw a gun in Russell's hand, Broems's later testimony at trial that he did see a gun in Russell's hand

---

[5] Russell filed supplemental papers after oral argument (Dkt. # 122, 124, 125 and 127) reiterating his argument that by not revealing that Broems's grand jury testimony was inconsistent with his incident report, Mattei obtained the indictment on the basis of evidence he knew to be perjurious. Russell is correct that a prosecutor may not knowingly offer perjurious testimony to the grand jury, and "where a prosecutor is aware of any substantial evidence negating guilt he should, in the interest of justice, make it known to the grand jury," United States v. Ciambrone, 601 F.2d 616, 623 (2d Cir. 1979). However, Russell has not shown that Broems's testimony was perjurious. That Broems's first wrote that he "believed" Russell had a gun, but then later testified he saw Russell with a gun, may be attributed to imprecise report writing rather than perjury. Moreover, even if it were perjury, Russell has not produced any evidence showing Mattei knew Broems's testimony was false. Finally, the inconsistency between Broems's report and his grand jury testimony is not "substantial evidence negating guilt." Given the other evidence indicating Russell possessed a gun, the inconsistency in Broems's incident report was not "substantial evidence," and AUSA Mattei had no obligation to make it known to the grand jury.

must have been perjury. When confronted with the inconsistency between his initial report and his sworn testimony, Broems responded as follows at the trial:

> Q: Can you tell me whether or not you described [in the report] Mr. Russell's actual withdrawing the firearm from the waistband?
>
> A: I did.
>
> Q: And in your description of that, what did you say, to the best of your recollection?
>
> A: To the best of my recollection, I know that I started off the paragraph of my advantage point and what I was observing happening in the car. I then described how I watched him reach down and pull, or attempt to pull, what I believed to be a weapon from his waistband. And then my next line was that I heard a distinct metal on metal sound. So, no, I did not put – I did not expressly put in there that I saw a weapon in his hand.
>
> Q: Why not?
>
> A: Looking back on it, I have no excuses. It was written poorly.
>
> Q: It was written poorly?
>
> A: Yes, sir.
>
> Q: Did you see the weapon coming out his waistband?
>
> A: One thousand percent.
>
> Q: Did you see his hand on it?
>
> A: I did.
>
> Q: Did you see him drop it?
>
> A: Yes.

> Q: You're sure?
>
> A: Yes.

An inconsistency between a written incident report and an officer's trial testimony is not proof of perjury. Broems was subject to cross-examination, and the jury nevertheless credited his testimony. Russell has not made any showing that his conviction should be overturned for knowing use of perjured testimony. Therefore, the indictment will not be dismissed.

## IV. Conclusion

For the reasons set forth above, the defendant's motions [Dkt. # 74, Dkt. # 84, Dkt. # 91, Dkt. # 92, Dkt. # 93, Dkt. # 102, Dkt. # 109, and Dkt. # 126] are DENIED.

SO ORDERED this  18th  day of May 2011, at Hartford, Connecticut.

 /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**